May it please the Court, I'm Elliot Feldman of Baker & Hostetler. I'm with Mike Snarr from my office in Washington, D.C. Council. I'd like to reserve four minutes for rebuttal from this time. Thank you. We are here proud to represent the International Boundary Commission and International Treaty Organization and Commissioner Dennis Shornack, who's here in the courtroom today. We're here because the Department of Justice and the President sought to subvert the object and purpose and plain language of an international treaty and the integrity of an international organization. This subversion first took the form of an ultimatum delivered to the International Boundary Commissioner to breach his oath of office as prescribed expressly in the treaties to, quote, The Commissioner had the courage to honor his oath and defend the international organization and the requirements of the treaties. For his stand on principle and fidelity to his oath in the law, the President purported to summarily dismiss him. Treaties, the treaties here, forbid involvement of Canada and the United States except when commissioners disagree. In this case, there was no disagreement between the commissioners. President Roosevelt, Theodore Roosevelt, and later President Coolidge, knowingly and deliberately transferred to the International Boundary Commission the authority to manage the border with Canada. There is no provision for removal of a commissioner from the commission, nor is there a removal provision in the Constitution. Counsel, you're addressing the merits right now of this issue, and I think our first concern is jurisdiction. I'd be happy to address that first. One is, do we have jurisdiction under 1292, which a panel of our court already rejected, or the collateral order doctrine? And the second question is whether you have standing to assert the claim you're making in our court. I'd be happy to address both those questions. We're here under the collateral order doctrine because there are really two criteria that govern the collateral order question, and the first of those two has already been addressed through the attempt by the Department of Justice to settle this case and to lift the stay in the lower court. And I would refer you to our January 20th, 2009 letter regarding the settlement, which is the docket entry 677-6353, in which we pointed out that the attempt to settle in the form of the settlement would have disposed of the questions and issues before this court on appeal and would not have been reviewable on appeal. That final disposition of those questions is a premise for an application of the collateral order doctrine and leaves only really one question, how important this case is. And we believe this case is very important because it goes to the integrity and existence of an international treaty, to the authority of the President, to the separation of powers with the Senate, to the protection of our border with Canada. What exactly are you asking us to do? We're asking you to reverse the decision below with respect to this particular question, that is the question with respect to the removal of Commissioner Schornack. We're asking you to find that the appointment of David Bernhardt no longer was not lawful. And, indeed, that particular question has been complicated because of the purported resignation of Commissioner Bernhardt. So, in effect, you're asking us for declaratory relief? We're asking you for declaratory relief. So what is your standing argument? Why do you have Article III standing under Luanne? As the court below pointed out, when it refused to lift the stay on the request of the Department of Justice, the question on appeal before you is who is the proper counsel and who is the proper defendant in the case below. I guess I have another question. And so tell me what I'm missing here, okay? But let's say we gave you everything you wanted. Couldn't President Obama and the State Department, if they wanted, just ignore it? In other words, why has your client not sued the president or, you know, joined the executive branch in some way that would make this claim something redressable by us? Judge Gould, I interpret you've asked me at least two different questions. Let me try to take them separately. Okay. First, as to why there's no separate suit. This case is not about Commissioner Shornack. He's not seeking reinstatement. He's not seeking his job, per se. He didn't sue anyone. He hasn't tried to sue anyone. He was named as a defendant in his official capacity in a suit brought by others, and this case arose in that context. So he has not asserted a claim or a personal claim. He's asserted only that he has a fiduciary responsibility to the treaty organization, and as the sole appointee in the United States, he's the sole spokesman and representative of the treaty organization. But isn't he, through you now, asserting a claim for declaratory relief? He's asserting a claim on behalf of the International Boundary Commission, and it is the commission and the treaty that are really at issue here and not him. I still have the same question. If the president is not a party to the suit or some other high executive branch official, then how would a ruling be redressable? I take that as the second question from your first intervention. I may have asked you 30 questions. I think just two. On the question of where the president now is and where the State Department now is, we submitted to the court a supplemental authority of an executive order by the president last September, which we think was quite indicative, because in that order the president set out a design for a different treaty, for the International Boundary and Water Commission Treaty with Mexico, but a design for succession as to conditions when a vacancy might occur for the commissioner in that commission. And notably, he did two things. One, he did not rely on any language that was already in that treaty. He borrowed the language from this treaty, which is the language that says that a vacancy occurs upon death, resignation, or other disability, language not to be found in the treaty to which he was addressing his executive order. And secondly, he asserted, of course, that it's his power to appoint a commissioner. Now, notably, in this case, since Commissioner Shornack's summary and purported dismissal, President Obama has taken no action to appoint anyone in this position. This position, therefore, is either filled by Commissioner Shornack or it's now vacant. The Department of Justice has tried to substitute under Rule 25D a defendant for this case, and they've tried to substitute the current deputy commissioner. There's no authority to do that. They really don't have a defendant now because they substituted Mr. Bernhardt. He resigned. And now there is no commissioner unless it's Commissioner Shornack. And we're not asking you to act with respect to the president. We're asking you merely to establish that Commissioner Shornack has never been lawfully removed, which would be no different from the actions taken in Wiener or in Morrison v. Olson, in the Nader-Bork case with respect to the appointment of Archibald Cox as special prosecutor. In all of these instances, courts have had to say whether someone was removed lawfully or not, without the president being a party, without regard to an action the president otherwise might take. Have I answered your question? I think I understand what your argument is on it, but I'm still having trouble with the idea of if we gave you the ruling you wanted, couldn't President Obama and his administration the following day do anything they wanted? Not anything they wanted because they would break the law. What's the law? You mean what we said? No, the law is the treaty. And the treaty is the supreme law of the land because it's a self-executing treaty. So it's the plain language of the treaty that governs here. And the treaty says that vacancies occur upon death, resignation, or other disability. Right, but let's say they interpret the treaty differently. Or let's say they say that under Article 2 of the Constitution, if I've got the right article there, the president has inherent power in foreign affairs to pick and choose who represents the U.S. on a sense of foreign relations matter. So the treaty is like a statute. Maybe it says something, but if it's unconstitutional, the president can assert that and take a different course. I think you have several questions there as well. Let me try to unpack them. This is not a matter of foreign relations. The treaties specify that the appointment of a commissioner is the business of the country involved. On the United States side, on the Canadian side, the Canadians do it differently than we do it. We don't interfere with the way they appoint a commissioner. They don't interfere and have not interfered with the way we appoint a commissioner. So that question of the appointment of the commissioner is not a question of foreign affairs. In addition to which, this appointment is not of an officer of the United States because the commissioner is neither confirmed by the Senate nor is he appointed pursuant to an act of Congress. He's appointed pursuant to the treaty, and as a non-officer of the United States, he is in the consistent line of appointments since the Jay Treaty in 1794. He plays the same role as someone who might be an arbitrator, who might sit on a NAFTA panel. He is, as not an officer of the United States, he still functions for the purpose, not as a representative of the president. He wasn't put here as a representative. He's not an ambassador. Did the actual commission say that he would serve at the pleasure of the president? Actually, it says during the pleasure of the president. During pleasure. But it means the same thing. Obviously, President Bush decided it was not his pleasure at some point. Thank you for that question. During the pleasure or at the pleasure of the president doesn't mean what you're suggesting it means. There's very substantial jurisprudence, starting with Quackenbush in 1900 of the Supreme Court, that the terms of the commission do not dictate the appointment. The appointment and the commission are two different propositions. Indeed, that was held by Justice Marshall in Marbury v. Madison,  and, indeed, the phrase at the pleasure of the president or during the pleasure of the president has been taken to confirm the act of making the appointment, but not the terms of the appointment itself. I'll give you an example. I understand your argument. In the International Trade Commission, a commissioner of the International Trade Commission, in a recess appointment, is appointed during the pleasure of the president. I have a commissioning document with me if you'd like to see it. And yet, Judge Eaton in Nippon Steel said, an ITC commissioner cannot be removed at will by the president. And, indeed, Wiener was appointed at the pleasure of the president. He could not be removed at will. The line of Supreme Court cases, beginning with Humphrey's executor, through Wiener, and Marson v. Olson, said that it depends on the job, not on the commissioning document. The terms of the job and whether it was intended to be insulated from presidential authority and removal is what determines whether someone can be removed at will or for cause. And in all those cases, it required removal for cause. Why are you asking us to declare this? Why didn't, when President Bush terminated the position, Mr. Schnornack's position, why didn't you sue him and say you can't do this, it's contrary to the treaty? Because this was entirely within the context of this case. And within the terms of this case, as the court below recognized when it was certifying our interlocutory appeal, this became a question of who speaks for the commission and who represents the commission properly in the case that was brought by the loos in their lawsuit. So this arises entirely in the context of this case, not in some other case, in which the commissioner had no interest in suing for his job. Well, has the commissioner been performing the duties of the commission? I'm sorry? Has the commissioner been performing his duties since he was terminated? This is a question of might and right. The president's emissaries changed the locks, took back all the electronic equipment, and essentially locked him out. This would not be a permissible act under the law. Has he been able to perform his duties as commissioner? No, he has not been able to do so. Our alternative would have been some kind of armed confrontation in the streets of Washington to take back the office. We didn't contemplate doing that. Let's not do that. But you also probably have the alternative in this case of bringing some proceeding to implead the president or the executive branch. I understand your question. No, but did you have that alternative? I don't perceive that we had the alternative in the context of this case because the case would have moved forward and permanently damaged the treaty organization and would have been unlawful because under the terms of the decision in the lower court, the Department of Justice would have proceeded in representing the Boundary Commission, having already said with no ambiguity that it was subordinating the interests of the Boundary Commission to other unspecified interests of the United States and, indeed, in its treatment of its client, where it never really met with the client, didn't tell the client what it was doing, in violation of the Department of Justice manual, it proceeded to represent other unspecified interests and not the interests of the Boundary Commission. Only we, arriving on behalf of the Boundary Commission as counsel, were representing the Boundary Commission's interests, and it has its own interests as an international organization. Are you saying that the settlement's invalid because your client did not authorize it? Yes, indeed. Okay. So you wanted to reserve some time? Yes, four minutes. Okay. So the question you're asking, Judge Gould, why was there no separate action? This action would have continued in the lower court. It would have led to the settlement that Judge Wardlow is indicating. The consequence of that would have been that the interests of the Boundary Commission to protect the border would have been fully compromised and, indeed, would have been destroyed, and it would have been a decision that now is before you as to whether the International Boundary Commission is an agency of the United States. I guess I was saying bring a separate action or implead the President in some way into this case because I'm really hung up on the redressability issue under Article III of how the relief that your client wants could be enforceable. I'm suggesting that this is no different, really, from the other cases that the Supreme Court has ruled on with respect to unlawful removals, and in which case the Court ruled that the person who had been removed was lawfully in their job. It didn't require any other separate action with respect to the President. Okay, I'll take another read on all this. Should I stop? Well, if you want to have rebuttal time, you should stop. Okay, thank you. Thank you. May it please the Court, I'm Mary Gay Sprague from the United States Department of Justice, representing Kyle Hipsley, the acting U.S. Commissioner and the International Boundary Commission. This is the first case in which a government official has challenged his removal from office in the context of a suit filed against the office by a private party prior to the removal. And in our view, this should be the last such case because we do not believe this is the proper procedure. In our view, Mr. Shornack had three potential strategies for challenging his removal from office. First, he could have sued the President for a declaration that his removal was unlawful and asked for an injunction for reinstatement. This is not often attempted because cases like Mississippi v. Johnson and Franklin v. Massachusetts set a very high hurdle for obtaining injunctive relief against the President. And given the redressability prong of Article III standing, one has to demonstrate that there is some relief that a court could afford. But in one instance, a removed federal official was able to establish Article III standing against the President, and that's the case of Swan v. Clinton decided by the D.C. Circuit in 1996 that was cited by the Lews in their brief and by Mr. Shornack in his reply brief. Mr. Swan was a board member of the National Credit Union Administration and was removed from his position. A new commissioner was appointed. And the D.C. Circuit ultimately concluded that it would conclude there was standing because there was a possibility that it could add as defendants the other board members and the executive director and enjoin those individuals to recognize Mr. Swan as the lawful member of the board. Ultimately, the court did not have to order an injunction because it held against Mr. Swan on the merits, holding that the removal was lawful. But we do believe that this was a procedure that Mr. Feldman, excuse me, Mr. Shornack could have availed himself of and could have requested that the district court in the Lews case stay that proceeding for some period of time while he sought the alternative relief, which would then have allowed the issue of the proper commissioner to be decided without the parties having to take positions on the merits in that case. The posture, the second possible way to challenge an unlawful removal is to file a suit in the court of claims seeking the pay that you say you should have been paid. And that actually is the posture of the cases decided by the Supreme Court that we rely on. How do you do that if it's a not-for-pay job? Well, that would be... A year that he wasn't being paid anything. That would be a potential problem, Your Honor. There might be some benefit of the job that would give him a hook for court of claims, court of federal claims jurisdiction, but that would certainly be a complication here. That sounds like a public service job where he's trying to help the country by what he's doing when he takes the job and he's not getting paid. So if he doesn't like the situation, I'm skeptical he could go to the court of claims. Well, Your Honor, that may well not have been a realistic avenue for Mr. Shornack. It typically is an avenue. And I would just like to point out that the cases in which the Supreme Court has decided whether or not a presidential appointee's removal was lawful or unlawful all came to the Supreme Court in that posture, Shurtleff, Myers, Humphreys, Executor, and Wiener. Thanks. What's the third route you think? The third route is not one that I would recommend, but it is an option that at least one removed official has pursued, and that is that if you are an official who is a member of a multi-member body, you can try to persuade your fellow board members to recognize you as the commissioner and not the president's new appointee. Okay, so that's not realistic here. What could he have done in this lawsuit? Could he have done a third-party claim or impleed the president or do something in this lawsuit? In this lawsuit, he would have at least had to attempt to file a third-party claim against the president. Then you would be an issue because it would be a claim for unlawful removal and reinstatement. Who was the Attorney General at the time? At the time Mr. Schornack was removed, it was Attorney General Gonzalez. I would just point out that, as I say, I don't advocate the third route, but that was the posture in which United States v. Wilson went to the D.C. Circuit. Right, but it sounds to me like the Department of Justice now is giving advisory. Do we have jurisdiction or not over this claim? No, Your Honor. I don't believe you have jurisdiction because when the president removed Mr. Schornack from office, whether or not a court would ultimately determine that removal was lawful, Mr. Schornack was removed from office. There's a presumption of regularity in government conduct, which simply means, of course, not that the government conduct would ultimately be upheld, but it does mean that the burden is on the party challenging the conduct to come forward and to obtain an order of court challenging the action. So our position is that when the government informed Mr. Schornack that he was removed from office, he was removed until Mr. Schornack got a declaration or some order of reinstatement, and that under Rule 25D, he ceased to be a defendant in the Loos lawsuit because it was a suit against the Office of the U.S. Commissioner on the International Boundary Commission and the U.S. Section of the International Boundary Commission. Okay, so one last question on this. Is Mr. Hipsley still the acting commissioner or has President Obama replaced him? Mr. Hipsley is presently the acting commissioner. President Obama has not yet made an appointment of an IBC commissioner. But, Your Honor, in the district court, in connection with the settlement, which is docket number 96 in the district court, we submitted to the district court Mr. Bernhardt's letter designating Kyle Hipsley as authorized to perform the duties of the commissioner pending appointment of a permanent commissioner. And Mr. Hipsley and Canadian Commissioner Peter Sullivan have been working together to perform the work of the commission over the last number of years. I checked the International Boundary Commission's website in preparation for oral argument and saw that the official annual joint report of the commission has been published and is available on the website. And those annual reports jointly signed by Canadian Commissioner Sullivan and the U.S. Commissioner indicate that the work of the commission is going forward. The annual report for 2007 notes that Mr. Shornack's office ended in July of 2007 and the commissioners wished him well in his future endeavors. Counsel, I have a question for you here. As I said during your adverse colleague's argument, I have a lot of concerns about redressability in the context of the current procedural posture of this case, you know, who the parties are. But, I mean, does the government, I'm just curious about this, study this, does the government agree that if Mr. Shornack wants to sue the president and attorney general to get a declaration about his rights, that he still can do so? Your Honor, I think laches is becoming a problem because the work of the commission is going forward and I think a potential defense is that that suit should have been brought promptly to get this sorted out. Okay, laches is a potential affirmative defense. But, I mean, in terms of the basic jurisdictional roadmap, does the government agree that he could file a new action and subject to any defense on the merits? Your Honor, we're not conceding that Mr. Shornack would be able to establish his standing in that suit. That would be an issue that would have to be addressed and briefed in that suit. That was like the issue that was addressed in the case you cited to me. Correct, in Swan v. Clinton. And the D.C. Circuit went through a very detailed analysis and looked at the structure of the commission and what relief might be available. I'm just trying to figure out if he really wants to get a merits declaration from the highest court that he can get on the issue. Is there a way for him to do it other than, you know, instead of trying his case in the New York Times or on the Internet? Your Honor, he could try to sue the President and or some officials, as in the Swan v. Clinton case, that perhaps could give him some relief. I would not predict success in that suit. Right, but it doesn't matter. It doesn't matter. Judge Gold is asking, he could still file that action. Yes. He could have defenses. You might argue there's no standing. Right. But he can still file that action. Yes, Your Honor. I'm sorry. I didn't understand. That was the point. Yes, he could. I'm sorry. Okay. Is there anything else you need to say? I would like to just briefly address the point of the 28J letter. It's an executive memorandum about the order of succession of the International Boundary and Water Commission, and we do not believe this is really relevant to the issues presented. In any event, it doesn't help Mr. Shornack's case. The language that was pointed to in that memorandum was an order of succession during any period in which the commissioner has died, resigned, or otherwise become unable to perform the functions and duties of the office of the commissioner. This language was taken from the Federal Vacancies Reform Act of 1998, 5 U.S.C. Section 3345A, and in the legislative history of that act, Senator Thompson, who was a principal sponsor, explained that that language was selected to make the law cover all situations when the officer cannot perform his duties, including when the officer is fired and when the officer is in jail if he does not resign. And that's at 144 congressional record, 27,496. So it seems that that supports the reading that the language, death, resignation, or other disability contemplates a legal disability in that one cannot perform one's duties because one has been removed from office. Would Your Honors like me to address the merits of that? It's not necessary for me, but if the other judges. It's not necessary for me. Because I'm more focused on jurisdiction. May I just ask you, Ms. Bragg, which division of the Department of Justice are you from? The Environment and Natural Resources Division, Your Honor. Right. Okay. Thank you. Thank you, Your Honor. Thank you. Thank you, Your Honor. The lawlessness of this case continues. Mr. Bernhardt has no authority under the Constitution, under the treaties, to name someone an acting commissioner. The authority to appoint a commissioner, an acting commissioner, is exclusively the authority of the President of the United States. To have someone who was named unlawfully to be the acting commissioner, then commissioner, and then to name his successor is an extraordinary chain of events. There is no defendant named on the Department of Justice side because the deputy commissioner's position doesn't even exist under the treaty. It was created for the purpose of the management of the commission itself. And that pattern is also to be found in the discussion we're now having about Swan v. Clinton. In Swan v. Clinton, the case that the Department of Justice has decided to invoke, there's a great deal of language about the questions that Judge Gould and Judge Warlow are raising. For example, in Swan v. Clinton it says, We do not believe that in so holding we are performing an end run around the redressability requirement of standing doctrine. Rather, we are simply recognizing that such partial relief is sufficient for standing purposes when determining whether we can order more complete relief would require us to delve into complicated and exceptionally difficult questions and so forth. And in Swan v. Clinton, the court says that they would expect the President to obey the ruling of a court. And therefore, when you say, well, if we make this decision, how do we know the President will obey it? Well, in Swan v. Clinton, certainly the court assumes that the United States government will respect the decision of a court. Now, had we sued separately outside this proceeding, the court below had said that the questions of whether the commission was an international organization or an agency of the United States and whether the commissioner was an officer of the United States were moot. Now, we believe she, in fact, decided those questions because in the decision to rely on Shurtleff and Myers, which is the first time that we've been able to find where any court has relied only on Shurtleff and Myers since 1935, in relying on those cases, she had to decide that this was an officer of the United States since those cases are specifically about officers of the United States. But there's no way to read the Appointments Clause of the Constitution and find Commissioner Shornack or the Commissioner of the International Boundary Commission, an officer of the United States. And with respect to at the pleasure of the President and the term limit involved, the ample cases, Berry v. Reagan, Borders v. Reagan, Morrison v. Olson, all say that this is not the determining language at all. The determinant is what the statute, in this case the treaty, say about the nature of the job. Now, the lower court got this right. It got right that this was a job intended to be insulated from the influence and power of the President. It was to resolve disputes on the border neutrally, impartially, just as his oath of office required. So she got right that part, and she got right that it was an international organization. She made that finding, but then in her decision she undid it. Okay, but then if on this position, and I know in your brief you say this is like a false argument or it shouldn't have weight, but wouldn't Mr. Shornack be entitled to serve for life then if he didn't resign? Through, you know, not just President Bush and President Obama, but let's say if he's lucky and he has good health, you know, the next, you know, X number of presidents. Your Honor, the first commissioner served three different presidents, the commissioner that was appointed in the context of the treaties. A special prosecutor or an independent counsel is appointed with no specific term. He's appointed to complete a job. David Barrett served 11 years pursuing Henry Cisneros. The answer to my question, yes. The answer to your question is yes, it is possible. It has never happened in 100 years. It's never presented a problem or an issue. No president and no prime minister has ever attempted to remove anyone this way, but on the Mexican commission, one commissioner served 27 years, another served 24 years. This job is a very specific job. It has a narrow purpose, and it's defined to be an expert, and the terms of the 1908 treaty said, hurry up and get working. And the recitals of the 1925 treaty go back to the 1908 treaty and say, here's what was accomplished by the commissioners under the 1908 treaty, and now there's more work to be done. Hurry up and do it. And if someone falls, they're to be replaced right away to complete the job. Here's another question for you. In the D.C. Circuit case that you mentioned where you say they said, we assume the president will abide our order, was there some executive branch official who was a party? I don't recall, Your Honor. I'm referring perhaps to what may be dicta, but which nevertheless was the statement of the court and a reasonable expectation. Courts have a reason to expect that the president will obey their rulings. Well, maybe. And in this case, in the current situation, the president of the United States has given no indication of any interest in undoing the condition of this case. Otherwise, perhaps he'd have tried to appoint someone, but he's appointed no one. I would expect a president of the U.S. to abide a ruling of the court interpreting a federal law, except if there's a constitutional provision at issue. I think I would expect a president to feel free to buck the interpretation if the president thought it was unconstitutional, unless the Supreme Court was the one making the ruling. But we are indeed here interpreting a federal law because the treaty is a federal law, and it is the supreme law of the land, but it's a federal law. Case law says that it's to be interpreted as if it were a statute for the purposes that you're invoking. And what we're interpreting here is the treaty. And the treaty says that this is a job meant to be insulated from influence. The Department of Justice, from the beginning of this case, has said it wanted to control the commissioner, that the commissioner had to be on its defense team, that the commission had to subordinate its interests to the interests of some other interests of the United States. And it said from the beginning that it wanted to side with private property over the public domain. And the settlement it introduced not only did that, but it took the four-foot-high wall and added two-and-a-half feet to it. Exactly what we foresaw, and which would have rendered the case before you, the issues before you, moot. And those issues are fundamental issues. Who can indeed represent the boundary commission? The commissioner is not simply about his job here. He's about speaking on behalf of the commission, the only person who could do that, the only person who could represent the International Treaty Organization. And that's in the terms of this case. It would have no utility outside the case. In this case, in this defense, he rose to defend the interests of the boundary commission and the treaty. All right. Well, thanks. All right. Thank you, counsel. Thank you. All right. The case of Blue v. International Boundary Commission will be submitted, and this session of the court is adjourned for today. Thank you. All rise.
judges: Hall, Wardlaw, Gould